UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KEITH E. ANDERSON, et al.,<br><br>Defendants. | CASE NO. CR02-0423C<br><br>ORDER |

This matter comes before the Court on Defendant Gary Steven Kuzel's motions to reconsider and stay his sentence (Dkt. No. 1268) and to delay his reporting date (Dkt. No. 1267). By these motions, Defendant seeks three forms of relief: (1) reconsideration and reduction of the terms of his sentence; (2) a stay of his sentence pending appeal; and (3) an extension to January 30, 2006 of the date by which he must report for imprisonment. Having considered the papers submitted by the parties in light of all the facts and circumstances in this case, and finding oral argument unnecessary, the Court DENIES Defendant's motion to reconsider and stay his sentence, but GRANTS his motion to delay his reporting date.

**I.      Reconsideration and Reduction of Sentence**

*A.      Defendant's Plea Agreement and Sentence*

In May 2005, after a hung-jury and a settlement conference, Defendant agreed to plead guilty to one count of aiding and assisting the filing of a false income tax return in violation of 26 U.S.C. § 7206(2). (*See* Dkt. No. 1127.) His plea was in consideration of the government dismissing

ORDER - 1

five other counts of § 7206(2) violations and two counts of conspiracy to defraud the government. In his plea agreement, Defendant acknowledged that the possible sentencing range for his plea would be up to three years imprisonment, as well as a $250,000 fine and one to two years of supervised release. (*Id.* 2.) Defendant further acknowledged his voluntary waiver of his entitlement to a jury trial and presumption of innocence, as well as his Sixth Amendment rights of confrontation and cross-examination. (*Id.*)

Defendant admitted to his role as an accountant in a fraudulent tax scheme, including the "filing [of] a 1999 federal income tax return for an AAA client reporting a Look Back tax deduction of $450,000[,] which he well knew and believed to be false." (*Id.* 4.) Defendant further admitted that "the tax loss due to [his] preparation of AAA income tax returns is more than $2.5 million but less than $5 million[,] resulting in an initial base offense level of 21." (*Id.* 5.) He also acknowledged that he entered the plea agreement "freely and voluntarily, and that no threats or promises, *other than the promises contained in this plea agreement*, were made to induce the defendant to enter his plea of guilty." (*Id.* 6 (emphasis added).) The agreement contained no promise by the government that additional evidence would be produced, or that the agreement was contingent on any such production. Finally, Defendant agreed that the plea agreement's written terms constituted the parties' complete agreement. (*Id.* 7.)

Defendant appeared before the Court on May 10, 2005, the day he signed the plea agreement. As required by Rule 11, the Court placed Defendant under oath and advised him of the charges against him, the potential penalties, and his rights and waivers thereof. Defendant accepted the plea agreement and the Court found him competent to do so. (*See* Dkt. No. 1126.)

At Defendant's October 21, 2005, sentencing, he argued that "the plea agreement [tax loss] numbers were based on something that really has no basis in reality." (Dkt. No. 1273, at 3:24–25.) The government responded that such arguments did "not comport with the facts," and that ample evidence supported the tax-loss figures to which Defendant had agreed. (*Id.* 4:13–5:12.) The Court made findings resulting in a sentencing range of 27 to 33 months—the same range

ORDER - 2

contained in the presentence report and to which Defendant agreed in the plea agreement. (*Id.* 8:21; *see also* Dkt. No. 1127, at 5.) Applying the factors set forth in 18 U.S.C. § 3553(a) and noting that "the guidelines are just a starting point now," the Court then departed downward from the sentencing range to impose a term of imprisonment of 24 months followed by one year of supervised release. (Dkt. No. 1273, at 8:7, 8:22–23; *see also* Dkt. No. 1260.)

Defendant now seeks reconsideration and reduction of his sentence based on a supposed lack of evidence supporting the terms of his plea agreement. As he did at sentencing, he argues that the government presented no evidence during trial or at sentencing supporting the $2.5 to $5.0 million tax-loss figure in the plea agreement. (*See* Pl.'s Mot. 5–7; *see also* Dkt. No. 1127, at 5.) He further claims that during the settlement conference, the government advised him that it possessed evidence supporting the minimum $2.5 million tax loss memorialized in the plea agreement. Defendant requested additional "details," and the government allegedly revealed to Defendant that the evidence it had relied on was contained on a co-defendant's computer. (Def.'s Mot. 4.) Defendant allegedly considered this evidence insufficient to support the $2.5 million tax loss, but signed the plea agreement anyhow because he disagreed with several of the Court's prior rulings and did not wish to seek retrial before this Court. (*Id.* 4–5.)

    B.  *Correction of Technical Sentencing Errors Under Rule 35*

As set forth the Court's recent order denying similar requests by Defendant Lynden Bridges (*see* Dkt. No. 1262), there are two possible avenues for Defendant Kuzel's request for a reduced sentence. The first is under Rule 35(a), but Defendant has not made the required showing that his sentence "resulted from arithmetical, technical, or other clear error." FED. R. CRIM. P. 35(a). Indeed, he does not argue that the Court disregarded the plea agreement by imposing an incorrect base offense level or departure therefrom. Instead, he makes the substantive argument that "the Base Offense Level was overstated in the Plea Agreement based upon a *substantial misunderstanding* that the Government had documentary evidence" supporting the minimum $2.5 million tax loss. (Def.'s Reply 5 (emphasis added).)

ORDER - 3

"The authority to correct a sentence under [35(a)] is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case" following appeal. FED. R. CRIM. P. 35(a), 1991 advisory committee's notes. Defendant's misunderstanding as to the nature of the evidence against him simply does not fit within the narrow range of technical or arithmetical errors contemplated by Rule 35(a). *See generally* CHARLES ALAN WRIGHT, ET AL., 3 FEDERAL PRACTICE AND PROCEDURE § 585.2 (3d ed. 2004).

### C.   Correction of Fundamental Sentencing Defects Under 28 U.S.C. § 2255

The second possible source for Defendant's request is 28 U.S.C. § 2255, which provides relief from sentencing errors of jurisdictional or constitutional magnitude, or from a sentence "amount[ing] to a fundamental defect that inherently results in a complete miscarriage of justice and that presents exceptional circumstances justifying extraordinary relief." *Lepera v. United States*, 587 F.2d 433, 435 (9th Cir. 1978) (internal quotations omitted). Defendant purports to identify an unconstitutional sentence unsupported by evidence of guilt beyond a reasonable doubt. (*See* Def.'s Mot. 5.) Properly framed, the allegations are more mundane: first, that Defendant mistakenly assumed the government would produce a particular type of evidence supporting the tax loss; and second, that the Court improperly disregarded that lack of evidence in imposing the sentence.

These allegations do not identify sentencing defects "so fundamental that the substance of a fair trial has been denied." 3 WRIGHT ET AL., *supra*, § 593, at 698. First, it is unquestioned that the government must honor plea agreements: "The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known." *Santobello v. New* York, 404 U.S. 257, 261–62 (1971); *see also Buckley v. Terhune*, 397 F.3d 1149, 1162 (9th Cir. 2005) (sentence outside range contained in plea agreement violated due process); *United States v. Barresse*, 115 F.3d 610, 612 (8th Cir. 1996) (government breached plea agreement by failing to honor promise to seek downward departure). But Defendant takes no issue with the terms of the agreement itself, and instead relies on his alleged misunderstanding that the government

ORDER - 4

would produce what he considered proof beyond a reasonable doubt of a $2.5 million tax loss. This misunderstanding, he argues, led him to agree to an artificially high base offense level relative to the quality and quantity of the government's evidence against him. (*See* Def.'s Reply 4.)

However, Defendant has provided no basis to conclude that the parties intended their bargain to include promises not memorialized by the plea agreement's express terms. *See United States v. Williams*, 809 F.2d 1072, 1079 (5th Cir. 1987) (finding no evidence that "promises other than those found in the written plea agreement existed"). The Court applies well-established principles of contract interpretation to plea agreements, *see Buckley*, 397 F.3d at 1163 n.4, the most relevant of which is the distrust of prior oral negotiations inconsistent with the completely integrated and final written expression of the parties' agreement. *See* E. ALLAN FARNSWORTH, CONTRACTS § 7.2 at 430 (3d ed. 1999). Defendant's demand for enforcement of a disputed oral representation by the government does not create a constitutional or otherwise fundamental sentencing defect cognizable under § 2255. *See Williams*, 809 F.2d at 1079 (rejecting challenge to plea agreement based on defendants' mistaken "belief" and "understanding" as to terms and effect of plea agreement).

Defendant's second argument is that, despite the purported lack of evidence, "the dollar amount of the tax loss was of substantial import and should have been the primary basis for the sentence." (Def.'s Mot. 6.) Defendant cites four cases in support of this argument, each of which illustrates the uncontroversial principle that a defendant's base offense level and enhancements or reductions thereto must be based on findings of fact beyond a reasonable doubt *or* the defendant's own admissions in a plea agreement. *See United States v. George*, 420 F.3d 991, 1001 (9th Cir. 2005); *United States v. Murdock*, 398 F.3d 491, 501–03 (6th Cir. 2005); *United States v. Larson*, 417 F.3d 741, 747 (7th Cir. 2005); *United States v. Tucker*, 419 F.3d 719, 720 (8th Cir. 2005).

Here, the Court's findings were consistent with the presentence report and led to a sentencing range of 27 to 33 months—the same range to which Defendant agreed in his plea agreement. He has not specified how he has been prejudiced by the decision to depart downward

ORDER - 5

from a starting point completely consistent with his own admissions in the plea agreement. Accordingly, the Court DENIES Defendant's motion to reconsider and reduce his sentence.

## II.     Stay of Sentence Pending Appeal

Defendant also requests a stay of his sentence pending appeal, arguing that the same issues supporting a reduced sentence establish that his appeal is not frivolous. (*See* Def.'s Mot. 8.) Under Rule 38(b)(1), a stay of sentence is required only when a court orders a defendant released pending appeal. FED. R. CRIM. P. 38(b)(1). The Court may not make such an order absent clear and convincing evidence that the appeal would raise "a substantial question of law or fact likely to result in" reversal or a reduced sentence. 18 U.S.C. § 3143(b). For the same reasons that the Court declines to reconsider the sentence, it finds that Defendant's appeal is not likely to result in a reversal or a reduced sentence. Accordingly, although Defendant has been allowed to self report for the commencement of his term of imprisonment, the Court DENIES his motion for a stay pending appeal.

## III.    Delay of Reporting Date

Finally, Defendant requests by separate motion (Dkt. No. 1267) that he be permitted to postpone reporting for his term of imprisonment until January 30, 2006. Presently, the judgment requires Defendant to report at the direction of the United States Marshals Service. (Dkt. No. 1261, at 2.) Neither Probation Services nor the government has opposed Defendant's request. Accordingly, the Court GRANTS the motion and ORDERS that the Marshals Service direct Defendant to surrender for imprisonment no earlier than January 30, 2006.

SO ORDERED this 9th day of November, 2005.

*[signature: John C. Coughenour]*

UNITED STATES DISTRICT JUDGE

ORDER - 6